IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BRANDFORD      *
            *
   v.         *     Civil No. CCB-10-3480
            *     Crim. No. CCB-08-0084
UNITED STATES OF AMERICA   *
            *
            *
          ******

MEMORANDUM

Now pending before the court is Petitioner David Brandford's pro se motion to vacate the conviction and sentence imposed after he was found guilty by a jury of conspiracy to commit bank larceny, in violation of 18 U.S.C. § 371, and aiding and abetting bank larceny, in violation of 18 U.S.C. § 2 and 18 U.S.C. §§ 2113(b) and (f).  Brandford seeks relief under 28 U.S.C. § 2255 on grounds that he received ineffective assistance of counsel at his trial and sentencing. The motion has been fully briefed and no evidentiary hearing is necessary.  For the reasons stated below, the motion will be denied in part and granted in part.

BACKGROUND

The evidence presented at trial established that Brandford, along with several cooperating defendants, participated in a conspiracy from 2003 to 2005 to steal Automated Teller Machines ("ATMs") from banks and convenience stores.  Although Brandford did not participate in the initial thefts, after an ATM was removed from a bank or store, the cooperating defendants testified it was brought to Brandford's automotive repair shop, where Brandford assisted in cutting open the machines to access the money inside.  (*E.g.*, Trial Tr. 123:16–130:16 Sept. 30, 2008.)  Later, the conspirators began to cut open ATMs at their locations using a saw borrowed from Brandford for a fee.  (*See* Trial Tr. 145:1–20 Oct. 1, 2008.)

1

On February 20, 2008, Brandford was indicted by a grand jury for conspiracy to commit bank larceny (Count I) and aiding and abetting bank larceny (Count II).  (*See* Indictment, Crim. No. CCB-08-084, ECF No. 1.)  Count II arose from the theft of an ATM from the BB&T Bank at 6901 Laurel Bowie Road, Bowie, Maryland, on or about August 18, 2003.  (*Id.* ¶ 6.)  Brandford's codefendants testified this was their first successful theft of an ATM.  (*E.g.*, Trial Tr. 120:20–23 Sept. 30, 2008.)  Although Brandford was not aware in advance that the codefendants were going to steal the ATM, once they brought it to his shop, he assisted in opening it.  (Trial Tr. 123:16–126:4 Sept. 30, 2008; Pet'r's Mem., Ex. B, Trial Tr. 231:20–237:2.)  Brandford received a share of the approximately $30,000 found inside the machine.  Following this event, Brandford continued to participate in opening ATMs stolen by his codefendants.  (Trial Tr. 129:14–130:16 Sept. 30, 2008.)

A jury found Brandford guilty on both counts following a trial in which he was represented by counsel.  Brandford was sentenced to a term of imprisonment of 60 months as to Count I and 70 months as to Count II, to run concurrently.  His conviction was affirmed by the Fourth Circuit.  389 F.App'x 310 (4th Cir. 2010) .  No sentencing issues were raised.  Brandford then timely filed the present motion to vacate pursuant to § 2255.  In his memorandum, Brandford identifies three ways in which he claims his counsel was ineffective:  (1) failing to argue that the cooperating defendants' testimony established his actual innocence of the charge of aiding and abetting bank larceny; (2) failing to object to the application of the wrong base offense level under the Sentencing Guidelines in determining the advisory sentencing range on Count II; and (3) failing to object to the imposition of a sentence as to Count I exceeding the statutory maximum under 18 U.S.C. § 371.

ANALYSIS

To prevail, Brandford must satisfy the "two components" of an ineffective assistance claim articulated in *Strickland v. Washington*:  He "must show that counsel's performance was deficient, and that the deficiency prejudiced the defense."  *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984)).  To establish deficiency, he must identify acts demonstrating his "counsel's representation 'fell below an objective standard of reasonableness.'"  *Id.* (quoting *Strickland*, 466 U.S. at 688).  Although "[j]udicial scrutiny" is "highly deferential," counsel's performance will found to be deficient if, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 689–90. "'[S]trategic choices'" based on a thorough investigation, the Supreme Court has noted, "'are virtually unchallengeable.'"  *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 690–91) (alteration in original).  Merely proving that counsel's performance was deficient, however, is not sufficient to secure relief.  A defendant also must establish prejudice by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

I.      *Aiding & Abetting Liability*

Brandford first contends that his lawyer was ineffective because he failed to argue that the cooperators' testimony established Brandford's actual innocence of aiding and abetting bank larceny by proving Brandford was unaware of the theft of the ATM from the BB&T Bank until after it was taken.  Brandford asserts that, because the elements of bank larceny were fulfilled before the ATM arrived at his shop, the assistance he provided in opening the ATM did not constitute aiding and abetting.

To prove guilt on an aiding-and-abetting theory, the government must show a defendant "'knowingly associated himself with and participated in the criminal venture.'" *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (quoting *United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983)).  Association requires that the defendant share "in the principal's criminal intent," meaning the defendant is "cognizant of the principal's criminal intent and the lawlessness of his activity." *Id.*  Additionally, the defendant must participate "at some stage" in the venture, though "participation in every stage . . . is not required." *Id.* (internal quotation marks and citation omitted).

Brandford is correct that "one cannot aid and abet a completed crime." *United States v. Ledezma*, 26 F.3d 636, 642 (6th Cir. 1994) (citing *Roberts v. United States*, 416 F.2d 1216, 1221 (5th Cir. 1969)).  It does not follow, however, that aiding and abetting excludes "activities, intended to ensure the success of the underlying crime, that take place after" the principal has committed the bare elements of the offense. *Ledezma*, 26 F.3d at 643 (discussing *United States v. Perez*, 922 F.2d 782 (11th Cir. 1991); *United States v. Coady*, 809 F.2d 119 (1st Cir. 1987); and *United States v. Orozco–Prada*, 732 F.2d 1076 (2d Cir. 1984)).  The facts of *United States v. Coady*, 809 F.2d 119, are illustrative as to when such activities may provide a basis for aiding and abetting liability.  In that case, the defendant made statements to a cocaine purchaser attesting to the drugs' quality after the drugs were delivered but before payment was made. *Id.* at 120–21.  At trial, the defendant testified he only learned a drug deal was in progress after the package containing drugs had been handed to the purchaser, and at that time he agreed to pretend he was running the operation at the behest of a government informant. *See id.*  The First Circuit concluded that, even accepting the defendant's version, he was guilty of aiding and abetting cocaine distribution although the crime of distribution requires only the transfer of drugs, not of

money.  *See id.* at 124–25.  The court declared, "[T]hough one need not covet cash to be guilty of . . . distribution, one may certainly aid and abet such a distribution—associate oneself with the venture so that one seeks by one's action to make it succeed—by facilitating the financial climax of the deal."  *Id.* at 124 (internal quotation marks and citation omitted).

Here, although the elements of bank larceny technically were fulfilled when the cooperators removed the ATM from the BB&T Bank, Brandford may nonetheless be guilty of aiding and abetting the crime.  He shared in the cooperators' intent to steal the money within the ATM, and his participation—namely, providing tools, a private location, and physical assistance in opening the ATM—was essential to "the financial climax" of the crime.  Accordingly, as the cooperating defendants' testimony does not establish Brandford's actual innocence of aiding and abetting, his counsel was not deficient for failing to press this argument.

II.     *Incorrect Base Offense Level*

Brandford next argues that his lawyer provided ineffective assistance by failing to object to the calculation of his offense level under the Sentencing Guidelines, as a result of which there is a reasonable probability he received a longer sentence than he otherwise would have on Count II.  The applicable Guideline provision for a violation of § 2113(b) is § 2B1.1, which provides for a base offense level of 7 if the "offense of conviction has a statutory maximum term of imprisonment of 20 years or more" or "6, otherwise."  U.S.S.G. § 2B1.1(a).  The petitioner agrees the base level should then be increased 12 points for the amount of loss and 2 points for obstruction of justice.  (*See* Pet'r's Mem. 9.)

At sentencing, the government stated, and defense counsel agreed, that the applicable base offense level was 7, resulting in a total offense level of 21, and an advisory sentencing

range of 70 to 87 months in light of the defendant's criminal history.[1]  The court sentenced

Brandford to 70 months imprisonment, relying in part on this calculation of the sentencing range.

Brandford now argues, however, that the court should have applied a base offense level of 6

because § 2113(b) is punishable by no more than ten years imprisonment.  *See* § 2113(b).  The

advisory range, with this base offense level, would be 63 to 78 months.  He asserts his lawyer

was deficient in failing to alert the court to the misapplication of the Sentencing Guidelines.

The government first counters that Brandford's counsel was not deficient because the

proper base offense level for a violation of § 2113(b) is 7.  The application notes to § 2B1.1

define "statutory maximum term of imprisonment" as "the maximum term of imprisonment

authorized for the offense of conviction, including any increase in that maximum term under a

statutory enhancement provision."  U.S.S.G. § 2B1.1, Application Notes 2(B).  The government

acknowledges that the statutory provision under which Brandford was convicted, 18 U.S.C. §

2113(b), permits a maximum sentence of ten years, but it argues a base offense level of 7 is

nonetheless appropriate because another subsection of § 2113, pertaining to a defendant who

kills another while committing an offense under the section, provides for a maximum term of life

imprisonment.  *See* § 2113(e).  It maintains that this is a statutory enhancement that, even if

inapplicable, provides a "statutory maximum term of imprisonment" of more than twenty years.

The government's argument fails for several reasons.  First, Brandford was convicted of

violating § 2113(b), so it is improper to look at provisions of the statute beyond this subsection in

determining what constitutes the "offense of conviction."  This reading of "offense of

conviction" finds support in the fact that separate provisions of the Sentencing Guidelines,

U.S.S.G. §§ 2A1.1 and 2B3.1, apply to violations of § 2113(e).  *See* U.S.S.G., App. A.  In

---

[1] The Presentence Report prepared by U.S. Probation and Pretrial Services also used a base offense level of 7.
(Presentence Report 14.)

addition, a sentencing enhancement should be considered in determining the "maximum term of imprisonment authorized for the offense of conviction" only if the enhancement is applicable to the defendant.  *Cf. United States v. Thompson*, 917 F. Supp. 22, 27 (D.D.C. 1996) (interpreting "offense statutory maximum," which the court notes is equivalent to "maximum term authorized," to mean "the statutory maximum or the enhanced statutory maximum, *if the statutory enhancement provisions were applicable*" (emphasis added)).  Brandford was not convicted of killing anyone during the commission of bank robbery, so the applicable statutory maximum is only that for bank larceny under § 2113(b).  This conclusion accords with other courts' application of a base offense level of 6 to individuals convicted of violating § 2113(b). *See, e.g.*, *United States v. Franklin*, 415 F.3d 537, 557–58 (6th Cir. 2005) (noting that a trial court determined the base offense level for bank larceny to be six, but remanding for resentencing on separate bank robbery charge); *United States v. Guante*, No. 09 Cr. 435(RWS), 2010 WL 2228567, at *3 (S.D.N.Y. June 3, 2010) ("The Guideline for the violation of 18 U.S.C. § 2113(b) is found in § 2B1.1 which provides for a base offense level of 6."); *United States v. Allen*, No. 08-CR-154, 2008 WL 5101690, at *1 (E.D. Wis. Dec. 1, 2008) ("Bank theft [under § 2113(b)] carries a base offense level of 6 under U.S.S.G. § 2B1.1(a)(2).").[2]

    In failing to argue for a base-offense level of 6, defense counsel's performance at sentencing fell below an objectively reasonable standard.  The determination of the proper base offense level does not depend upon a disputed legal issue, but is clear from "the plain language of the guideline provision."  *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). Further, there is no basis to find that counsel's failure to alert the court constituted a strategic decision.  Accordingly, the performance of Brandford's counsel at sentencing was deficient.

---

[2] Unpublished opinions are cited not for their precedential value but for the persuasiveness of their reasoning.

"To demonstrate prejudice at the sentencing stage, a defendant must show that, but for counsel's deficient performance, there was at least a reasonable probability of a different sentence." *Aylor v. United States*, Civil No. PJM 10–1469, 2011 WL 2118694, at *4 (D. Md. May 27, 2011). The defendant need not establish that the difference in sentence would have been "so significant as to render the outcome of sentencing unreliable or fundamentally unfair"; "any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203, 121 S. Ct. 696 (2001). [3] Brandford has not demonstrated, however, a reasonable probability he would have received a different sentence had his base offense level been correctly identified. While he was sentenced at the bottom of the advisory guideline range, the guidelines are not mandatory, and the advisory range is only one factor a court must consider under 18 U.S.C. § 3553(a) in imposing a reasonable sentence. The court explained its reliance on several factors beyond the guideline range: the offense was very serious; Brandford had a

---

[3] Misconstruing the Fourth Circuit's holding in *United States v. Mikalajunas*, 186 F.3d 490 (4th Cir. 1999), the government argues that relief for a sentence based on an erroneously calculated guideline range may be granted only if the sentence constitutes "a miscarriage of justice." Because the defendant's sentence falls within the guideline range using a base offense level of six, the government contends it does not satisfy this requirement. *Mikalajunas* does not, however, support such a broad proposition. Instead, in that case, the Fourth Circuit noted,

> [T]o collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains *or* he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a procedural default must turn on something external to the defense, such as . . . a denial of effective assistance of counsel.

*Id.* at 492–93 (emphasis added). The Circuit Court demanded a party seeking relief under § 2255 show a "miscarriage of justice" only where the cause-and-prejudice requirement was not otherwise met, for instance, by establishing an ineffective-assistance-of-counsel claim under *Strickland*. *See id.* at 493–97 (determining that counsel was not ineffective before considering whether the sentence based on a misapplication of the sentencing guidelines was a miscarriage of justice). This comports with the Supreme Court's holding in *Massaro v. United States*, 538 U.S. 500, 123 S. Ct. 1690 (2003), that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255." *Id.* at 504. In contrast, an error of nonconstitutional law, such as a misapplication of the Sentencing Guidelines, "does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S. Ct. 2235 (1979) (internal quotation marks and citations omitted). Because Brandford has asserted a constitutional ineffective-assistance-of-counsel claim, rather than challenging the application of the Sentencing Guidelines directly, he need not show that his sentence constitutes a miscarriage of justice, but rather that the *Strickland* requirements of deficient performance and prejudice are satisfied.

lengthy criminal record (indeed was on probation at the time of the bank larceny offense); and Brandford not only failed to accept responsibility but also obstructed justice by testifying falsely at trial.  (Sentencing  Tr. 108:3-110:18 Dec. 18, 2008).  There is no reason to believe that a change in the advisory range to 63-78 months rather than 70-87 months would result in a lower sentence.  Therefore, no prejudice has been shown.

III.        *Sentence Exceeding Statutory Maximum*

Finally, Brandford argues his counsel was ineffective in failing to argue that the imposition of a sentence of sixty months on Count I, conspiracy to commit bank larceny under § 2113(b), exceeded the statutory maximum under 18 U.S.C. § 371.  A violation of § 371 is punishable by a term of imprisonment of "not more than five years," except "[i]f . . . the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." § 371.  Under § 2113(b), bank larceny is a felony if the value of the "thing taken . . . exceed[s] $1,000," but if the value is $1,000 or less, the offense is a misdemeanor and the sentence imposed may not exceed one-year imprisonment.  § 2113(b); *see also* 18 U.S.C. § 3559(a)(6) (classifying as a misdemeanor an offense for which the maximum term of imprisonment is one year or less).  Count I therefore is punishable by a term exceeding one year only if the conspirators intended to steal money or property worth more than $1,000.

Brandford claims that, under the rule articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), the statutory maximum sentence on Count I was one year because the indictment did not specify and the jury did not expressly find he conspired to steal something with a value exceeding $1,000, and his lawyer's failure to object to his sixty month sentence on this basis constitutes ineffective assistance.  This argument lacks merit.

*Apprendi* dictates that "'[a]ny fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.'" *United States v. Milam*, 443 F.3d 382, 386 (4th Cir. 2006) (quoting *Apprendi*, 530 U.S. at 476) (emphasis omitted).  Here, although the indictment does not explicitly state that the object of the conspiracy was to commit bank larceny involving money or property worth over $1,000, among the three overt acts it lists as committed in furtherance of the conspiracy is the theft of the ATM from the BB&T Bank on or about August 18, 2003.  (*See* Indictment ¶ 5.a, Crim. No. CCB-08-084, ECF No. 1.)  This is the larceny Brandford was charged with aiding and abetting in Count II, which specified that property and money with value exceeding $1,000 was taken.  This allegation, while indirect, is sufficient to satisfy *Apprendi*'s first requirement.

At trial, the court instructed the jury that, in order to convict Brandford of conspiracy, it must conclude that at least one of the three overt acts charged was knowingly committed by a coconspirator.  These acts are:  (1) the theft of the ATM from the BB&T Bank; (2) the breaking open of an ATM stolen from a Bank of America in Woodbridge, Virginia; and (3) the breaking open of an ATM stolen from a Bank of America in Bowie, Maryland.  (Pet'r's Mem., Ex. C, Trial Tr. 28:21–30:4.)  Brandford contends that, because the conspiracy conviction may have rested on the thefts of the Bank of America ATMs and the jurors received no instruction requiring them to find the value of things taken during these thefts, the jury did not make the factual determinations required by *Apprendi*.  This argument fails, first, because the jury convicted Brandford on Count II, demonstrating it concluded that this overt act occurred.  *See U.S. v. Peters*, 617 F.2d 503, 506 (7th Cir. 1980) (where jury found defendant guilty of certain substantive offenses, also reasonable to conclude jury found defendant guilty of a conspiracy to

commit those offenses).  Additionally, all evidence presented at trial regarding the other two alleged overt acts indicated that each involved the theft of more than $1,000 of money and property.  (*See, e.g.*, Trial Tr. 21:7–32:18 Sept. 30, 2008; Trial Tr. 34:20–40:20 Sept. 30, 2008.) This case therefore is distinguishable from those cited by the petitioner, in which the evidence presented permitted the jury to find the defendants guilty of conspiracy on the basis of overt acts carrying different statutory maximums.  *See, e.g.*, *United States v. Rhynes*, 196 F.3d 207, 237–39 (4th Cir. 1999) (finding that the defendants' sentences must be vacated because the jury's verdict on the multi-drug conspiracy count was ambiguous, and the sentences exceeded those for the lowest possible statutory maximum), *vacated in part on other grounds*, 218 F.3d 310 (4th Cir. 2000) (en banc); *Orozco-Prada*, 732 F.2d at 1083 (holding that, because the indictment charged the defendant with committing either cocaine-related or marijuana-related conspiracy and the jury returned a general guilty verdict on the conspiracy charge, the defendant's sentence could not exceed the lower statutory maximum applicable to marijuana-related conspiracy); *cf. United States v. Delph*, 371 F. App'x 63, 66 (11th Cir. 2010) (unpublished per curiam opinion) (concluding, in light of unrebutted evidence that the value of the lobsters at issue exceeded $4,000, the court's failure to require the jury to find explicitly that the defendant "conspired to illegally harvest lobsters worth more than $350" was at most harmless error).

Brandford suggests his attorney should have contended, despite abundant evidence that the jury found the conspiracy involved the theft of money and property worth in excess of $1,000, that the lower statutory maximum applied, but it is unlikely this argument would have prevailed.  Further, the failure to make this argument did not fall outside of the "wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

A certificate of appealability for a ruling on a motion under § 2255 will not issue absent "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2) (2006). When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 336-389 (2003).  Brandford has not made this showing and a certificate of appealability will not be issued by this court.[4]

For the foregoing reasons, by separate Order, the defendant's motion will be denied.


September  25, 2012
Date

_____/s/_____
Catherine C. Blake
United States District Judge


---

[4]  Brandford  is of course free to seek a certificate of appealability from the Fourth Circuit.